464 F.3d 255
 KLEIN & CO. FUTURES, INC., Plaintiff-Appellant-Cross-Appellee,
v.
BOARD OF TRADE OF the CITY OF NEW YORK, New York Clearing Corporation, Mark D. Fichtel, Albert Weis, Jeff Soman, Charles Sweeney, Al Peres, Chris Meek, George Haase, Lawrence Gulitti, Bryan Sayler, Hitesh Trivedi, New York Cotton Exchange,
Inc., New York Futures Exchange, Inc., Joseph O'neill, Walter Fair, Evan Thomas, Joseph Jach, Defendants-Appellees-Cross-Appellants,
First West Trading, Inc., and Norman Eisler, Defendants-Cross-Appellants,
John Doe 1-10, Richard Roe and Peter Poe, Defendants.
 Docket No. 05-1374-cv(L).
 Docket No. 05-1662-cv(XAP).
 Docket No. 05-1702-cv(XAP).
 Docket No. 05-1718-cv(XAP).
 United States Court of Appeals, Second Circuit.
 Argued: February 3, 2006.
 Decided: September 18, 2006.
 
 Jeffrey Plotkin, Pitney Hardin LLP, New York, NY, for Appellant Klein & Co. Futures, Inc.
 Gary D. Stumpp, Stumpp & Bond LLP, New York, NY, for Appellees First West Trading, Inc. and Norman Eisler.
 Howard R. Hawkins, Jr., Cadwalder, Wickerhsam & Taft LLP, New York, NY, for Appellees Nybot, et al.
 Before: POOLER and B.D. PARKER*, Circuit Judges.
 B.D. PARKER, JR., Circuit Judge:
 
 
 1
 Klein & Co. Futures Inc. is a futures commission merchant ("FCM") and a clearing member of New York Clearing Corporation ("NYCC"). Klein appeals the dismissal by the United States District Court for the Southern District of New York (Daniels, J.) for lack of standing to bring claims against Defendant-Appellees the Board of Trade of the City of New York ("NYBOT"), New York Clearing Corporation ("NYCC"), Norman Eisler, and others (collectively "NYBOT Defendants") under Sections 22(a) and (b) of the Commodity Exchange Act (CEA), 7 U.S.C. § 25. After dismissing Klein's claims under the CEA, the district court declined to exercise jurisdiction over its supplemental state law claims and dismissed them without prejudice. The NYBOT defendants cross-appeal that dismissal. For the reasons set forth below, we affirm. Except as noted, the facts are drawn from the complaint.
 
 
 2
 As a FCM, Klein facilitated the trading and fulfilled certain obligations of its customers who traded through the NYBOT. Prior to May 2000, Defendant Norman Eisler, whose conduct is the focus of Klein's complaint, was the Chairman of the New York Futures Exchange ("NYFE"). The NYFE is a futures and options exchange designated by the Commodity Futures Trading Commission ("CFTC") as a contract market for the trading of commodities futures and options, including P-Tech Futures and Options ("P-Tech contracts"). Eisler was also a member of the NYFE's Settlement Committee for the Pacific Stock Exchange Technology Index Futures Contract & Options (the "Committee"). The Committee's primary responsibility was to calculate the price of P-Tech contracts for the purposes, among other things, of calculating margin requirements in customers' accounts.[1] Eisler was also a customer of Klein and the principal of First West Trading Inc. ("First West"), another Klein customer. Eisler traded in P-Tech contracts for the account of First West. The trades were unsolicited and were made without input or advice from Klein.
 
 
 3
 Allegedly, Eisler, in his capacity as a member of the Committee, secretly manipulated the settlement prices of P-Tech contracts.[2] This manipulation benefitted Eisler's P-Tech positions but, at the same time, caused Klein to miscalculate the margin requirements for the First West account. Around March 2000, the NYBOT began receiving complaints regarding the P-Tech settlement prices but failed to make proper inquiries or to place Klein or other members of the industry or public on notice of potential irregularities.
 
 
 4
 In early May 2000, Klein, based on the incorrect settlement prices, computed the required margin in First West's account at $700,000, but Eisler was unable to post that amount. Klein then contacted the NYBOT and expressed concerns regarding the illiquidity of the P-Tech contracts, Eisler's inability to meet First West's margin call, and his inability to liquidate First West's contracts. Klein reported that the First West margin deficit, if not covered, would impair Klein's net capital and cause Eisler significant losses. Klein requested that the NYFE Board halt trading in P-Tech contracts, but no such action occurred.
 
 
 5
 At that point, the scheme began to unravel. In mid-May, Eisler's NYBOT membership privileges were suspended and he was dropped from the Committee. Once this occurred, the remaining Committee members recalculated the settlement prices and First West's margin deficit ballooned to $4.5 million, an obligation it could not meet. As a result, Klein was required to take an immediate charge against its net capital, forcing it below the minimum required for clearing members of the NYCC and the New York Mercantile Exchange ("NYMEX"). Its membership privileges were suspended and Klein collapsed.
 
 
 6
 Klein then sued on various claims. Klein's first claim alleged that NYFE violated § 5b of the CEA by failing to enforce its rules, and sought a declaration that NYFE should be suspended as a contract market. Klein further alleged that the NYBOT Defendants violated the anti-fraud provisions in CEA § 4b and 17 C.F.R §§ 33.9 and 33. 10, and the insider provisions of CEA § 9. In addition, the complaint alleged a variety of state law claims.
 
 
 7
 The NYBOT Defendants moved to dismiss principally on the ground that Klein was not a purchaser or seller of futures contracts or options and, therefore, lacked standing under § 22 of the CEA. They also they moved to dismiss Klein's state law claims with prejudice on the ground that they were preempted by the CEA. The district court agreed and dismissed Klein's claims under the CEA for lack of standing. Specifically, the district court concluded:
 
 
 8
 Plaintiff Klein lacks standing under Section 22 to bring this suit. Klein does not allege that it was either a purchaser or a seller of P-Tech Futures and Options. Furthermore, Klein does not claim that it traded for its own account. Rather, it is undisputed that First West, not Klein, traded in P-Tech Futures and Options. Indeed, Klein claims that these trades were effected "without input, counsel, advice or any type of recommendation whatsoever from Klein & Co." Klein further alleges that it "had no equity or financial interest in the First West account nor did Klein & Co. exercise control over the trade in said account."
 
 
 9
 Klein & Co.Futures. v. Bd. of Trade, No. 00-CV-5563-GBD, 2005 WL 427713, at *4 (S.D.N.Y. Feb. 18, 2005 (internal citations omitted)).
 
 
 10
 The court further reasoned that § 22 precluded an action by a plaintiff that "did not suffer its damages in the course of its trading activities on a contract market." Id. Without addressing preemption, the district court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice. This appeal followed.
 
 II. DISCUSSION
 
 11
 We review de novo the district court's dismissal of a complaint for lack of standing under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). See Kaliski v. Bacot (In re Bank of N.Y. Deriv. Litig.), 320 F.3d 291, 297 (2d Cir.2003). We review the court's decision to decline supplemental jurisdiction over state law claims for abuse of discretion. See Valencia ex rel Franco v. Lee, 316 F.3d 299, 304 (2d Cir.2003).
 
 A. Standing under § 22 of the CEA
 
 12
 CEA § 22 enumerates the only circumstances under which a private litigant may assert a private right of action for violations of the CEA. Section 22 includes two types of claims. Section 22(a) relates to claims against persons other than registered entities and registered futures associations. 7 U.S.C. § 25(a).[3] Section 22(b) deals with claims against those entities and their officers directors, governors, committee members and employees. The text of the two subdivisions requires that a putative plaintiff fall within one of the four required relationships set forth in § 22(a)(1)(A-D).
 
 
 13
 The common thread of these four subdivisions is that they limit claims to those of a plaintiff who actually traded in the commodities market. Specifically, the remedies afforded by CEA § 22(b) are available only to a private litigant "who engaged in . . . transaction[s] on or subject to the rules of" a contract market. Id. § 25(b)(1)-(3).[4] The section contains another important limitation. Subsection 22(b)(5) provides that the private rights of action against the exchanges enumerated in § 22(b) "shall be the exclusive remedy . . . available to any person who sustains a loss as a result of" a violation of the CEA or an exchange rule by a contract market or one of its officers or employees. Id. § 25(b)(5) (emphasis added).
 
 
 14
 Klein does not fall within any of the required subdivisions of § 22(a)(1)(A)-(D). To fit under one of the four, Klein must essentially either have (1) received trading advice from Eisler or First West for a fee; (2) traded through Eisler or First West or deposited money in connection with a trade; (3) purchased from or sold to Eisler or First West or placed an order for the purchase or sale through them; or (4) engaged in certain market manipulation activities in connection with the purchase or sale of a commodity contract.
 
 
 15
 Here, Klein was a FCM and a clearing member of the NYCC that cleared First West's trades through NYCC. Klein does not contend that it purchased or sold P-Tech contracts. Klein was not a trader of P-Tech contracts; nor did it own the P-Tech contracts at issue. To the contrary, Klein's complaint admits that it had no financial interest in the First West account and that all the trades in question were unsolicited by First West. Klein's losses were not the result of its purchases or sales in the commodities market. Klein functioned merely as a broker or agent that earned commissions for handling its customers trades. As a clearing member, Klein cleared their trades and was obligated to post margins for them as required. Under NYCC Rules governing clearing members, Klein was liable for its own failure to post the required margin on its customers' positions, whether or not Klein collected that margin from defaulting customers such as First West. In view of the provisions of sections 22(a) and (b) expressly limiting the categories of persons that can seek remedies under the statute we conclude, as did the court below, that a plaintiff such as Klein who falls outside those categories lacks standing. See Water Transp. Ass'n v. ICC, 722 F.2d 1025, 1028-29 & n. 2 (2d Cir.1983); see also Am. Agric. Movement Inc. v. Chicago Bd. of Trade, 977 F.2d 1147, 1153 (7th Cir.1992) (finding that § 22 of the CEA forecloses remedies on behalf of non-traders), aff'd in part, rev'd in part on other grounds by Sanner v. Chicago Bd. of Trade, 62 F.3d 918 (7th Cir.1995). Cf. Nicholas v. Saul Stone & Co., 224 F.3d 179, 187 (3d Cir.2000).
 
 
 16
 Klein's main response to this reading of the statute is that the remedies of § 22 are not limited to those who actually traded and that it has standing because, as the legislative history demonstrates, Congress intended to protect those such as itself who were injured in the course of trading on a contract market. According to Klein, the legislative history shows that Congress's main concern in drafting § 22 was to protect "market participants" who suffered actual losses arising from a transaction on the futures market. Klein contends that Congress intended the restrictions on standing to prevent suits on speculative damages to assets subject to price fluctuations on the commodities markets but which are not the subject of transactions. Affording standing to a FCM, such as Klein, is consistent with these purposes because a FCM that has experienced catastrophic losses, that were caused by a customer who had engaged in manipulation, has suffered what Congress had in mind: actual, non-speculative damages resulting directly from transactions on a commodities exchange.
 
 
 17
 This argument founders on the clear text of the statute. Section 22(b)'s remedies are expressly available only to a private litigant who "engaged in any transaction on or subject to the rules" of contract markets or other registered entities. As noted, Klein was not an owner of P-Tech contracts traded by First West. To the contrary, Klein was required by NYCC Rules to keep the options in a segregated First West account and not to co-mingle assets. Klein did not fall within any of the categories enumerated in § 22(a)(1)(A-D). Because we conclude the statute is clear, we decline Klein's invitation to parse the legislative history. See 7 U.S.C. § 25(a); Lee v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir.1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation and that judicial review must end at the statute's unambiguous terms." (internal citations omitted)).
 
 
 18
 In the alternative, Klein contends that it has standing under CEA to challenge the NYBOT Defendants as a "forced" purchaser and seller of securities. Klein contends that the Supreme Court in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), after confirming that the federal securities laws confer an implied private right of action, granted standing under § 10(b) of the Securities Act of 1934 to securities brokers as "forced" purchasers or sellers, in situations where they, as clearing members, suffered damages arising from obligations to guarantee their customers' trades. Klein argues that as a FCM and clearing member, it was subject to federal statutes as well as the rules and by-laws of NYBOT, NYFE, and NYCC that required Klein to maintain funds guaranteeing its customers' transactions on the contract market. In his brief on appeal, Klein asserts that it assumed "a very real investment risk that the commodity contracts its customers traded would maintain or increase in value, a risk that is identical to that taken by any purchaser or seller of a commodity contract who is granted standing under the CEA." In sum, Klein argues that it has standing because it faced essentially the same risks as a purchaser or seller of commodities contracts. We disagree.
 
 
 19
 It is undisputed that Klein was not a trader of P-Tech contracts. Moreover, Klein did not own the P-Tech contracts at issue. Rather, First West, not Klein, traded in P-Tech contracts. Indeed, as the district court recognized, Klein stated in its complaint that it had no financial interest in the First West trading activity and had nothing to do with its trading decisions. Consequently, regardless of whether the First West trading position rose or declined in value, Klein had no interest in any of the resulting profits or investments losses. As the district court observed, "Klein suffered damages because of its customer First West's inability to cover its margin call . . . ." Klein, 2005 WL 427713, at *4. Thus, Klein's loss was a credit loss, not a trading loss.
 
 
 20
 Because § 10(b) and Rule 10(b)(5) are implied causes of action, their "boundaries are left to judicial inference." Grace v. Rosenstock, 228 F.3d 40, 46 (2d Cir.2000). The securities laws discussed in Blue Chip Stamps — § 10(b) of the Securities Act of 1934 and Rule 10(b)(5) — contain no corollary to the express limitations on standing expressly imposed by CEA § 22(b). Section 22 was enacted as part of the Futures Trading Act of 1982 in response to Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), where the Supreme Court recognized an implied right of action under the CEA. In response, Congress enacted CEA § 22 but enumerated the only circumstances under which a civil litigant could assert a private right of action for a violation of the CEA or CFTA regulations. See H.R.Rep. No. 565, Pt. I, 97th Cong., 2d Sess. 57 (1982), reprinted in 1982 U.S.C.C.A.N. 3871, 3906. Congress went on to emphasize that the private right of action in CEA § 22 "shall be the exclusive remedy . . . available to any person who sustains a loss as a result of" a violation of the CEA. 7 U.S.C. § 25(b)(5). Enforcing the statute that Congress wrote, we conclude Klein lacks standing because it was not "engaged in any transaction on or subject to the rules" of a contract market and did not suffer any "actual losses that resulted from such transaction" as required by § 22 of the CEA.
 
 B. State Law Claims
 
 21
 After dismissing the claims under the CEA for lack of standing, the district court dismissed the supplemental state law claims without prejudice. The NYBOT Defendants, who had argued that the state law claims were preempted by the CEA, cross-appeal on the grounds that the district court should have dismissed Klein's state law claims with prejudice on preemption grounds. We review this dismissal for abuse of discretion. See Valencia, 316 F.3d at 304.
 
 
 22
 It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims. See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir.2006) ("`in the usual case in which all federallaw claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'")(quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); Castellano v. Bd. of Trs., 937 F.2d 752, 758 (2d Cir.1991). In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity — the "Cohill factors." See Cohill, 484 U.S. at 350, 108 S.Ct. 614. The NYBOT Defendants contend that the district court should have retained jurisdiction to decide the important, quintessentially federal question of whether the state law claims are preempted by the CEA. See Baylis v. Marriott Corp., 843 F.2d 658, 665 (2d Cir.1988) ("One factor that may sometimes favor retaining pendent jurisdiction is when a state claim is closely tied to questions of federal policy and where the federal doctrine of preemption may be implicated.").
 
 
 23
 Because the decision to retain jurisdiction is discretionary and not a litigant's right, a court is not required either to accept or decline supplemental jurisdiction when a state law claim raises federal preemption issues. See Kolari, 455 F.3d at 122; Valencia, 316 F.3d at 305 ("In providing that a district court `may' decline to exercise such jurisdiction, [42 U.S.C. § 1367(c)] is permissive rather than mandatory."); Baylis, 843 F.2d at 665 (concluding that the Cohill factors outweighed the federal preemption factor, and that the district court did not abuse its discretion in refusing to exercise supplemental jurisdiction). Following consideration of the Cohill factors, the proper course is left to the court's discretion.[5] See, e.g., Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir.2004). Our concern, therefore, is solely whether that discretion was abused and we find it was not.
 
 III. CONCLUSION
 
 24
 For the reasons discussed, the judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Denny Chin of the United States District Court for the Southern District of New York was originally assigned to sit by designation on this panel but recused himself before oral argument. This case is decided by the two remaining members of the panel pursuant to Section 0.14(b) of the Local Rules
 
 
 [1]
 P-Tech Futures and Options prices are based on a composite index of one hundred technology stocks compiled by the Pacific Stock Exchange. The prices of those stocks and the value of that index may change up to the close of trading. Therefore, the Committee was charged with setting the settlement price after the close of the market
 
 
 [2]
 On July 11, 2001, the CFTC filed a complaint against Eisler and First West charging them with manipulation and making false reports under the CEA and CFTC regulations. The CFTC's order, entered with the consent of Eisler and First West but without their admitting or denying the findings, requires them to pay a civil penalty of up to $4,923,000 for violating provisions of the CEA and regulations alleged in the complaintIn re Eisler, CFTC Docket No. 01-14, 2004 WL 77924 (CFTC Jan. 20, 2004).
 
 
 [3]
 Section 22(a) provides that proper plaintiffs are parties:
 (A) who received trading advice from such person for a fee;
 (B) who made through such person any contract of sale of any commodity for future delivery (or option on such contract or any commodity); or who deposited with or paid to such person money, securities, or property (or incurred debt in lieu thereof) in connection with any order to make such contract;
 (C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of —
 (i) an option subject to section 4c of this Act (other than an option purchased or sold on a registered entity or other board of trade);
 (ii) a contract subject to section 19 of this Act; or
 (iii) an interest or participation in a commodity pool; or
 (D) who purchased or sold a contract referred to in subparagraph (B) hereof if the violation constitutes a manipulation of the price of any such contract or the price of the commodity underlying such contract. CEA § 22(a); 7 U.S.C. § 25(a)(1).
 
 
 [4]
 Section 22(b) reads, in relevant part:
 (1)(A) A registered entity that fails to enforce any bylaw, rule, regulation, or resolution that it is required to enforce by sections 5 through 5c, (B) a licensed board of trade that fails to enforce any bylaw, rule, regulation or resolution that it is required to enforce by the Commission, or (C) any registered entity that in enforcing any such bylaw, rule, regulation, or order, shall be liable for actual damages sustained by a person who engaged in any transaction on or subject to the rules of such registered entity to the extent of such person's actual losses that resulted from such transaction. . . .
 (3) Any individual who, in the capacity as an officer, director, governor, committee member, or employee of a registered entity or registered futures association willfully aids, abets, counsels, induces, or procures any failure by such entity to enforce . . . any bylaw, rule, regulation, or resolution referred to in paragraph (1) . . ., shall be liable for actual damages sustained by a person who engaged in any transaction. . . . (5) The rights of action authorized by this subsection shall be the exclusive remedy under this Act available to any person who sustains a loss as a result of (A) the alleged failure by a registered entity or registered futures association or by any officer, director, . . . or employee to enforce any bylaw, rule, regulation, or resolution referred to in paragraph 1 or 2 of this subsection, or (B) the taking of action in enforcing any bylaw, rule, regulation, or resolution . . . that is alleged to have violated this Act, or any Commission rule, regulation, or order. CEA § 22(b), 7 U.S.C. § 25(b).
 
 
 [5]
 The Cohill factors favor dismissal. When dismissed, this case was in the early stages of litigation. There had been no significant activity aside from the consideration of motions to dismiss. (A 3-7) Comity and fairness also favor dismissal, as it will procure for the parties "a surer-footed reading of applicable law" with regard to theeight remaining state law claims. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)