13-392 (L)
Silverman v. Teamsters Local 210 Affiliated Health and Insurance Fund

## UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: February 6, 2014     Decided: August 1, 2014)

Docket Nos. 13-392-cv(L), 13-1175-cv(XAP)

- - - - - - - - - - - - - - - - - -x

Leon Silverman, Trustee of the Union Mutual Medical
Fund,

                  <u>Plaintiff-Appellee-Cross-
                  Appellant</u>,

James Crowley, Trustee of the Union Mutual Medical
Fund, Janet Sachs, Trustee of the Union Mutual Medical
Fund, Herbert Pobiner, Trustee of the Union Mutual
Medical Fund, Louis Flacks, Trustee of the Union
Mutual Medical Fund, Paul Berkman, Trustee of the
Union Mutual Medical Fund, Union Mutual Medical
Fund,

                  <u>Plaintiffs-Counter-
                  Defendants-Appellees-Cross-
                  Appellants</u>,

Arthur Fishbein, Trustee of the Union Mutual Medical
Fund,

                  <u>Plaintiff-Counter-
                  Defendant</u>,

- v.-

Teamsters Local 210 Affiliated Health and Insurance Fund, George Miranda, in his capacity as Trustee of the Allied Welfare Fund and in his capacity as Trustee of Teamsters Local 210 Affiliated Health and Insurance, Robert Bellach, in his capacity as Trustee of Teamsters Local 210 Affiliated Health and Insurance Fund, Anthony Cerbone, in his capacity as Trustee of Teamsters Local 210 Affiliated Health and Insurance Fund,

<u>Defendants-Appellants-</u>
<u>Cross-Appellees</u>,

Crossroads Healthcare Management, LLC,

<u>Defendant-Counter-Claimant</u>,

Allied Welfare Fund, Charles Hall, Sr., in his capacity as Trustee of the Allied Welfare Fund, Martin Keane, in his capacity as Trustee of the Allied Welfare Fund, Thomas Mackell, Jr., in his capacity as Trustee of the Allied Welfare Fund, Martin Sheer, in his capacity as Trustee of the Allied Welfare Fund and in his capacity as Trustee of Teamsters Local 210 Affiliated Health and Insurance Fund, John Does 1-6 in their capacities as Trustees of Teamsters Local 210 Affiliated Health and Insurance Fund and Crossroads Healthcare Management, LLC,

<u>Defendants</u>.[*]

- - - - - - - - - - - - - - - - - - -x

_____

[*] The Clerk of Court is directed to amend the caption to conform with the above.

2

Before:    JACOBS, CALABRESI, and POOLER, Circuit Judges.

The Teamsters Local 210 Affiliated Health and Insurance Fund ("210 Fund") and its trustees appeal from a final judgment of the United States District Court for the Southern District of New York (Jones, J.), awarding approximately $2.5 million to the Union Mutual Medical Fund ("UMM Fund") for unpaid ERISA plan contributions.  Because the 210 Fund was not obligated to contribute funds to the UMM Fund under the terms of an ERISA plan, the district court lacked subject matter jurisdiction under ERISA over the claims on which the UMM Fund prevailed.  However, because these claims can be construed as state law breach-of-contract claims, we vacate and remand for the district court to decide, in the first instance, whether to exercise supplemental jurisdiction and decide the claims under this alternative theory.

Judge Calabresi concurs in part and dissents in part in a separate opinion.

THOMAS A. THOMPSON, Law Offices of Thomas A. Thompson, Yarmouth, Maine (Roland Acevedo, Scoppetta Seiff Kretz & Abercrombie, New York, New York, on the brief), for Defendants-Appellants-Cross-Appellees.

ROBERT J. KIPNEES (Ryan J. Cooper, on the brief), Lowenstein Sandler LLP, Roseland, New Jersey, for Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants.

DENNIS JACOBS, Circuit Judge:

Under collective bargaining agreements ("CBAs") entered into by multiple employers with Teamsters Local Union No. 210 (the "Union"), the employers promised to contribute to the Teamsters Local 210 Affiliated Health and Insurance Fund ("210 Fund"), and the 210 Fund would, in turn, "unconditionally and irrevocably" transfer approximately 14 percent of the payments to another fund, the Union Mutual Medical Fund ("UMM Fund"), which provided medical benefits primarily to retired union members.   Both the 210 Fund and the UMM Fund are group health plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

In 2006, after some years in which the 210 Fund duly paid the UMM Fund in accordance with the CBAs, the 210 Fund established a new medical plan for the retirees and, no longer in need of the UMM Fund, amended the CBAs--with consent of the employers but not the UMM Fund--to reduce payments to the

4

UMM Fund by 98 percent. The UMM Fund (and its trustees) brought this action in the United States District Court for the Southern District of New York (Jones, J.), against the 210 Fund and its trustees (collectively, "Defendants") to contest the amendment of the CBAs without its consent, to demand an accounting of all amounts received by the 210 Fund under the CBAs, and to collect the payments abated by the amendment.

The UMM Fund's Amended Complaint asserts three claims against the 210 Fund. The first two claims, which plead entitlement to money, an accounting and payment, do not indicate whether the one or both claims arise under state contract law, under a federal or state statute, or under some combination of these. The third claim asserts a violation of ERISA.

The district court construed all three claims as pleading causes of action under section 502 of ERISA, which provides a federal civil cause of action to an ERISA plan fiduciary to obtain equitable relief for harms resulting from violations of (i) "the terms of" an ERISA "plan," and (ii) ERISA. ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B). The district court construed the first two claims to allege that, by failing to remit the amounts owed to the UMM Fund under each CBA, the 210 Fund violated "the terms of" an ERISA "plan," and

5

proceeded to identify the CBA as constituting the terms of an ERISA plan. The court construed the third claim as asserting a violation of ERISA, but not violation of an ERISA plan term: i.e., that the 210 Fund's reduced payments to the UMM Fund violated section 515 of ERISA, which requires an employer, or an entity acting in the interest of an employer, to fulfill its CBA plan contribution obligations (the "Section 515 claim").

The district court dismissed the Section 515 claim on the ground that the 210 Fund was neither an "employer" nor an entity acting "in the interest of an employer." Fishbein v. Miranda, 670 F. Supp. 2d 264, 277-78 (S.D.N.Y. 2009) ("Miranda I"). Two years later, the district court granted summary judgment in favor of the UMM Fund on its first two claims, concluding that each CBA "established" an ERISA "plan," and that the 210 Fund violated a plan term by reducing payments to the UMM Fund. Fishbein v. Miranda, 785 F. Supp. 2d 375, 384-85 (S.D.N.Y. 2011) ("Miranda II"). The court awarded the UMM Fund approximately $2.5 million (plus interest) in damages and fees. The 210 Fund appeals from the award, and the UMM Fund cross-appeals the dismissal of the Section 515 claim.

The Section 515 claim was properly dismissed because, as the district court explained, the 210 Fund is not an employer, and the 210 Fund's payments to the UMM Fund were not made in the interest of an employer. See Miranda I, 670 F. Supp. 2d at 277-78. Absent some type of agency or ownership relationship, or direct assumption of an employer's obligations, an entity is not considered to be acting "in the interest of" an employer for purposes of section 515. Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 575-76 (2d Cir. 1995).

However, the district court erred in granting summary judgment in favor of the UMM Fund on its first two claims, because the terms of each CBA were not terms of an ERISA plan. The terms of an ERISA plan, and the benefits it agrees to provide, are not set forth in a CBA; they are by definition set out in a governing trust document and the summary plan description.

Although the UMM Fund has failed to state a claim under ERISA, the first two claims in the Amended Complaint can be construed as state law breach-of-contract claims. We therefore (i) affirm the dismissal of the Section 515 claim; and (ii) vacate the grant of summary judgment in favor of the UMM Fund on the first two claims, and remand for the district court to decide in the first instance whether to exercise supplemental jurisdiction over them.

## BACKGROUND

Plaintiff UMM Fund is an employee health plan established in 1978 to obtain and provide medical and insurance benefits to its participants and beneficiaries, primarily retired Union members and their spouses. The purposes and obligations of the UMM Fund are enumerated in a September 6, 1978 Trust Indenture ("UMM Fund Trust Indenture") entered into between the predecessor to the Union and a corporation that represents the interests of the retirees. The UMM Fund is an employee welfare benefit plan governed by ERISA. See 29 U.S.C. § 1002. The named plaintiffs are trustees of the UMM Fund.

Defendant 210 Fund is likewise an employee welfare benefit plan under ERISA. It was established to provide health insurance for Union members and their spouses, and is funded by contributions from employers who are party to CBAs with the Union. In April 2006, the 210 Fund assumed all the liabilities (and 80 percent of the assets) of another ERISA plan, the Allied Welfare Fund ("Allied Fund"), and began to receive contributions pursuant to a number of CBAs under which employers had previously been contributing to the Allied Fund.[2]

---

[2] The Allied Fund was initially a named defendant in this case but was voluntarily dismissed. The administrator and manager of the 210 Fund, Crossroads Healthcare Management, LLC ("Crossroads"), was also initially named as a defendant but was voluntarily dismissed.

The UMM Fund receives the bulk of its funding from employer contributions pursuant to CBAs with the Union. But employers pay nothing to the UMM Fund directly. The CBAs (in nearly identical language) direct the employers to contribute funds to the Allied Fund--now the 210 Fund--and then, in turn, direct the 210 Fund to pass a portion of the contribution along to the UMM Fund:

> It is hereby agreed . . . the Employer shall pay to the Allied Welfare Fund the sum of Fifty-Nine ($59.00) Dollars, each and every week for each employee who is employed within the bargaining unit[.] . . .
>
> From and out of the contributions made to the Allied Welfare Fund as specified above, Eight Dollars per employee per week shall be unconditionally and irrevocably allocated and paid to the Union Mutual Medical Fund . . . for the benefit of retired employees of the Employer and retired employees of all other employers similarly situated and their families.

In January 2006, the Allied Fund and the Union began persuading employers to amend their CBAs and reduce the amount remitted to UMM Fund. The motive for the Union's initiative is in dispute: The UMM Fund alleges that it was retaliation for a failed merger between the UMM Fund and the Allied Fund, whereas the 210 Fund cites the Union's unhappiness with certain fees and

9

practices of the UMM Fund (leading the Union to create a replacement medical plan). Whatever the motivation, the CBAs were amended in March or April 2006, without the UMM Fund's consent. Under the amended CBAs, the amount the 210 Fund remitted to the UMM Fund per employee per week was reduced from eight dollars to ten cents.

In the first quarter of 2006, the UMM Fund received between $59,000 and $74,000 pursuant to the CBAs. After the CBA amendments became effective in April, the UMM Fund's receipts dwindled to a few hundred dollars per month.

At the same time the Allied Fund and the Union were persuading employers to amend their CBAs, the trustees of the Allied Fund were in settlement negotiations with Duane Reade, an employer that had allegedly failed to make required CBA payments years earlier. The parties settled their dispute in March 2006 for $825,000. The 210 Fund concedes that these funds were received by the Allied Fund in satisfaction of Duane Reade's obligation to pay contributions to the Allied Fund under its CBA, and that the UMM Fund got nothing from the settlement, but denies that the 210 Fund received all the settlement proceeds when it became successor in interest to the Allied Fund one month later. Miranda II, 785 F. Supp. 2d at 379-80.

The UMM Fund filed suit in November 2006, and filed an Amended Complaint in June 2008 asserting three claims against the 210 Fund.[3] The first claim alleged that the Allied Fund received "at least [$825,000] from Duane Reade by way of settlement of the [Allied Fund]'s claim for unpaid contributions," and that "[t]he [UMM Fund] is entitled" to eight dollars for every fifty-nine dollars of the settlement proceeds received. Am. Compl. ¶¶ 44-46. The requested relief was, principally, an accounting of the funds received in the settlement and remittance of the portion claimed by the UMM Fund (plus interest). Id. at ¶ 46.

The second claim alleged that payments to the UMM Fund "dropped precipitously since the end of March 2006," and sought an accounting of all monies received by the Allied Fund and the 210 Fund "for the period January 1, 2005, to the date of judgment." Id. at ¶¶ 48-50. A prospective order was sought, requiring the Local 210 Trustees "to remit to the [UMM Fund] Trustees, within five (5) days of receipt . . . , that portion properly payable to the [UMM Fund] out of all monies received by way of contributions by employers pursuant to

---

[3] The Amended Complaint also asserted three causes of action against Crossroads, which were all voluntarily dismissed and are not at issue in this appeal.

[CBAs]." Id. at ¶ 50.

The UMM Fund's third claim, the Section 515 claim, asserted that "failure by the [Allied Fund] and the [210 Fund] to remit contributions constitutes a violation of section 515 of ERISA, 29 U.S.C. § 1145." Id. at ¶ 53. The UMM Fund asked the court to "[o]rder[] the [Allied Fund] and the [210 Fund] to remit to the [UMM Fund] all employer contributions received by them which were properly payable to the [UMM Fund] pursuant to the terms of the collective bargaining agreement." Id. The Section 515 claim also asks for liquidated damages available for a section 515 violation, see 29 U.S.C. 1132(g), plus interest and attorney's fees.

Absent from the first two claims in the Amended Complaint is mention of their legal basis. The pleading is unclear as to whether the duty of the 210 Fund to remit funds and provide an accounting was premised on state contract law, a federal or state statute, or something else. Only the Section 515 claim indicates the legal basis for monetary relief: a violation of the ERISA provision mandating that an employer (or an entity acting in the interest of an employer) comply with its plan contribution obligations under a CBA. Such an ERISA violation is actionable under section 502(a) of the statute. See 29 U.S.C. § 1132(a).

12

The 210 Fund (jointly with the other defendants) filed a motion to dismiss all three claims for lack of jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  On November 16, 2009, the district court dismissed the Section 515 claim with prejudice, holding that the Allied Fund and the 210 Fund were not "employers" and were not acting in the interest of any employers.  The court held that, within the meaning of ERISA, an entity can act "in the interest of" an employer only if it is empowered to negotiate benefits on behalf of the employer.  Miranda I, 670 F. Supp. 2d at 278.  Since the Allied Fund and the 210 Fund were no more than "intermediaries between the Contributing Employers and Plaintiffs" and were not authorized to negotiate on behalf of the contributing employers, Section 515 liability was precluded.  Id.

The district court, however, preserved the first two claims in the Amended Complaint.  The court began by considering the legal basis for the claims, omitting that the complaint itself failed to offer one:

> *I. Claims for "Appropriate Equitable Relief" Under ERISA § 502(a)(3)(B)*
>
> Under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), a "participant, beneficiary, or fiduciary" of an employee benefit plan may bring a civil suit "to obtain other appropriate equitable relief (i) to redress . . .

13

violations or (ii) to enforce . . . the terms of the plan." Plaintiffs make claims for equitable relief under this section, demanding an accounting of all monies received from Duane Reade pursuant to the Duane Reade Settlement and a judgment ordering Defendants [Allied Fund] and Local 210 Fund to remit to Plaintiff [UMM Fund] the same percentage of the Duane Reade Settlement monies as would be owed to Plaintiff [UMM Fund] under the Duane Reade CBA. Plaintiff further demands an accounting of all monies received by Defendants [Allied Fund] and Local 210 Fund since January 1, 2005 pursuant to all CBAs in which Plaintiff is named and a judgment ordering Defendants to relinquish all monies owing to Plaintiff [UMM Fund] under these CBAs.

Id. at 271. The district court thus interpreted the claims as alleging that the

failure to pay the UMM Fund under the terms of the CBA was a "violation" of

"the terms of the plan" and was therefore actionable under section 502(a)(3)(B) of

ERISA. But the opinion did not consider how the terms of a CBA, which is not

an UMM Fund plan document, could constitute terms of an ERISA plan. The

district court went on to deny the Defendants' motion to dismiss, concluding that

the UMM Fund had standing to sue as a third-party beneficiary of the CBA, and

that the CBA could be "enforced against" the 210 Fund, a non-signatory, because

the 210 Fund "accepted the written agreement and . . . acted upon it." Id. at 272.

After discovery, the UMM Fund moved for summary judgment. In

opposition, the 210 Fund argued that the district court lacked subject matter

14

jurisdiction over the two claims, because: Section 502(a) permits an ERISA plan fiduciary to sue for equitable relief only if (i) a party has violated an ERISA provision or (ii) a party has violated "the terms of the plan"; the court had already dismissed the Section 515 claim, the sole alleged violation of ERISA itself; and the CBAs were not part of an ERISA "plan."

The district court held that it had jurisdiction on the following analysis. Under ERISA, a "plan" includes "any . . . plan, fund, or program . . . established or . . . maintained for the purpose of providing for its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits." 29 U.S.C. § 1002(1). Because each CBA earmarks the funds contributed to the Allied Fund (and the UMM Fund) for "insurance, welfare, Major Medical insurance and similar benefits" of union members, the district court concluded that the CBA itself "established" an ERISA plan, and therefore its terms constituted terms of "a plan." Miranda II, 785 F. Supp. 2d at 384.

Turning to the merits of the two remaining claims, the district court granted summary judgment in favor of the UMM Fund, and directed the 210 Fund to provide the UMM Fund with an accounting of (1) all monies received

15

from the Duane Reade settlement; and (2) all monies received pursuant to the CBAs from January 1, 2005, to the date of the order. Id. at 375. After the accounting was complete, the district court entered judgment in favor of the UMM Fund in the amount of $2,460,777.33, plus pre- and post-judgment interest. Silverman v. Miranda, 918 F. Supp. 2d 200, 221 (S.D.N.Y. 2013) ("Miranda III"). The request for attorney's fees was denied. Id.

Both parties appeal. The 210 Fund appeals the award to the UMM Fund. The UMM Fund cross-appeals, challenging (i) the dismissal of its Section 515 claim, (ii) the method used to calculate interest on the award, and (iii) the denial of attorney's fees.

## DISCUSSION

We review the district court's dismissal of the Section 515 claim pursuant to Rule 12(b)(6) de novo. See, e.g., Legnani v. Alitalia Linee Aeree Italiane, S.P.A, 274 F.3d 683, 685 (2d Cir. 2001). We review de novo a district court's grant of summary judgment, Pilgrim v. Luther, 571 F.3d 201, 204 (2d Cir. 2009), and we affirm only where we are able to conclude, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable

16

inferences in its favor, that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**I**

Subject matter jurisdiction over ERISA claims is conferred by section 502(f), which allows the federal district court to grant relief "provided for in subsection (a) of this section." ERISA § 502(f), 29 U.S.C. § 1132(f). The referenced subsection enumerates the following ERISA causes of action:

> (a) A civil action may be brought . . .
>
> > (3) by a participant, beneficiary, or fiduciary
> >
> > > (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
> > >
> > > (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

ERISA § 502(a), 29 U.S.C. § 1132(a). The provision specifies the parties who have standing to bring suit--a plan participant, beneficiary, or fiduciary--as well as two categories of redressable violations: (i) violations of "any provision of this subchapter;" and (ii) violations of "the terms of the plan." Id.

17

The trustees of the UMM Fund assert standing as fiduciaries. Their third claim sought relief for an ERISA violation; specifically, a failure to comply with section 515 of ERISA, which provides that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

ERISA § 515, 29 U.S.C. § 1145. An ERISA "employer" is defined as "any person acting directly as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan." 29 U.S.C. § 1002(5); see also Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 575 (2d Cir. 1995) (applying this definition of "employer" to section 515). The Amended Complaint asserts that the 210 Fund was obligated to contribute to the UMM Fund "in the interest of" the "employers" who were signatories to the CBAs, and that the 210 Fund failed to do so. Am. Compl. ¶ 12.

A person who acts in an employer's interest is one who controls an employer (e.g., a parent corporation) or explicitly assumes the employer's obligations. Thus, in Cement & Concrete Workers District Council Welfare Fund v. Lollo, a corporate president who personally assumed the corporation's

18

obligation to make pension contributions under a CBA was held liable under section 515. 35 F.3d 29, 37 (2d Cir. 1994); see also Simas v. Quaker Fabric Corp. of Fall River, 6 F.3d 849, 855 (1st Cir. 1993) (corporation that took control of an employer is an ERISA employer); Frank v. U.S. West, Inc., 3 F.3d 1357, 1363 n.5 (10th Cir. 1993) (parent corporation may be an ERISA employer). However, absent "any type of agency or ownership relationship or direct assumption of the employer's functions with regard to the administration of a plan," courts in this Circuit have been reluctant to find employer status for the purpose of section 515. Greenblatt, 68 F.3d 561 at 575-76; see also Bldg. Serv. 32B–J Health Fund v. Impact Real Estate Mgmt., Inc., No. 00-Civ-1343, 2000 WL 1530009, at *4 (S.D.N.Y. Oct. 16, 2000); Mason Tenders Dist. Council Welfare Fund v. Logic Constr. Corp., 7 F. Supp. 2d 351, 356 (S.D.N.Y. 1998).

Citing Lollo, the UMM Fund argues that the 210 Fund actually assumed the employer's contribution obligation under the terms of each CBA. The argument does not withstand scrutiny of the CBA wording in Lollo. There, the president of a family-owned business signed the CBA

in a dual capacity both on behalf of himself and on behalf of the
Employer and represents by his signature his authority to bind
himself, the Employer or Firm, and the principals and members

19

thereof. The person signing on behalf of the Employer also agrees to be personally bound by and to assume all the obligations of the Employer provided for in this Agreement.

Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund and Annuity Fund v. Lollo, No. 89 cv 3784, 1992 WL 281039 (E.D.N.Y. Oct. 1, 1992). The CBAs here contain no provision obligating the employer to pay the UMM Fund, or an assumption by the 210 Fund of such an obligation. Rather, each CBA obligates the employer to pay a contribution in full to the 210 Fund, which in turn dispenses it.

The CBAs do provide that "[f]rom and out of the contributions made" to the 210 Fund, a portion "shall be unconditionally and irrevocably allocated and paid to the Union Mutual Medical Fund." Whether this provision contractually obligated the 210 Fund, a non-signatory to the CBAs, to remit these funds to the UMM Fund is a question of contract law heavily litigated in the district court. A related contract question is whether, under relevant state law, the UMM Fund was a third-party beneficiary of the pre-amendment CBAs, such that the Union and management could not amend the CBAs to impair the flow of payments to the UMM Fund without its consent. But under no reading of the CBAs (pre-amendment or post-amendment) is the *employer* obligated to contribute any

20

money to the UMM Fund. Not a single employer has been named as a defendant. Because the 210 Fund was not obligated to remit funds to the UMM Fund "in the interest of" an employer, the Section 515 claim was properly dismissed.

**II**

The other two claims against the 210 Fund were understood by the district court to be included within the category of civil ERISA claims that permit a plan fiduciary to seek "appropriate equitable relief . . . to enforce any provisions of . . . *the terms of the plan*." 29 U.S.C. § 1132(a) (emphasis added). The UMM Fund argued that by failing to comply with a term of the CBA, the 210 Fund violated the terms of an ERISA plan.

ERISA defines an "employee benefit welfare plan" as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,
>
> (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or

21

unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or

(B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

ERISA § 3(1), 29 U.S.C. § 1002(1). The parties agree that the UMM Fund is an employee benefit welfare plan under this definition.

ERISA itself does not make plain where one looks to find the "terms" of an ERISA plan, other than to mandate that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." ERISA § 402(a), 29 U.S.C. § 1102(a)(1); see Smith v. Dunham-Bush, Inc., 959 F.2d 6 (2d Cir. 1992) (discussing the written instrument requirement). But a number of federal appellate circuits, including this Court, have identified (in various contexts) two documents as setting forth plan terms: (1) the governing plan document, i.e., the trust agreement or contract under which the plan was formed;[4] and (2) the summary plan description ("SPD"), a plain-English

_____

[4] ERISA establishes a general requirement that plan assets be held in trust, 29 U.S.C. § 1103(a), (b). The trust agreement is sometimes signed by the union and its employers, see, e.g., Chao v. Merino, 452 F.3d 174, 177 (2d Cir. 2006), and sometimes, as here, by the union and a separate corporation representing a subset of union members.

22

summary of plan benefits and obligations that the plan administrator must file with the United States Department of Labor and provide to each participant and beneficiary of the plan. See, e.g., Pettaway v. Teachers Ins. & Annuity Ass'n of Am., 644 F.3d 427, 434 (D.C. Cir. 2011); Jenkins v. Yager, 444 F.3d 916, 934 n.4 (7th Cir. 2006); Militello v. Cent. States, Se. & Sw. Areas Pension Fund, 360 F.3d 681, 686 n.2 (7th Cir. 2004); Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc., 293 F.3d 1139, 1143 (9th Cir. 2002); Sunbeam-Oster Co., Inc. Grp. Benefits Plan for Salaried & Non-Bargaining Hourly Emps. v. Whitehurst, 102 F.3d 1368, 1375 (5th Cir. 1996) (noting that in some circumstances, the SPD may be the only plan document); cf. Heidgerd v. Olin Corp., 906 F.2d 903, 907-08 (2d Cir. 1990) (discussing which plan term controls when the governing plan document contradicts the SPD). These two documents must be made available by the plan administrator "for examination by any plan participant or beneficiary." 29 U.S.C. § 1124(b). In other words, the documents that lay out the plan terms must be readily accessible in written form to all covered employees. See Curtiss–Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995) (noting that one of ERISA's purposes was to afford employees the opportunity to inform themselves, "'on examining the plan documents,'" of their rights and obligations

23

under the plan) (quoting H.R. Rep. No. 93–1280, at 297 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 5077, 5078). The UMM Fund finds no case that treats a CBA as a governing plan document setting forth ERISA plan terms. The district court cited none.

If a plan's trust agreement explicitly provides that employers must fulfill their CBA contribution obligations (or comply with other plan terms), such a provision can subject a delinquent employer to suit under section 502(a) for violating a plan term. However, the Supreme Court has only recognized such a cause of action when the employer violated a plan term that the CBA expressly bound the employer to perform. Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559 (1985). For example, the CBA in Central States provided that the employer was "bound by [the plan] trust agreement[]." Id. at 565. And the trust agreement specifically "place[d] on each participating employer the responsibility to make 'continuing and prompt payments to the Trust Fund as required by the applicable collective bargaining agreement,'" and further obligated each employer to furnish records to the plan administrator upon request. Id. On those facts, the employer was required to adhere to these plan terms and submit to a field audit conducted by the plan trustee.

24

Here, however, no term of the UMM Fund Trust Indenture obligates employers to make prompt payments under their CBAs. See UMM Fund Trust Indenture, Silverman v. Miranda, No. 06-cv-13222 (S.D.N.Y. June 5, 2010), ECF #125-2. And in any event, the CBAs do not require that the employers bind themselves to the UMM Fund Trust Indenture. Although the CBAs provide that the Allied Fund and the UMM Fund must handle the contributions received in accordance with the terms of their respective trust indentures, that is not an obligation that the employers perform (or could perform).

The district court opinion granting summary judgment in favor of the UMM Fund held that the CBA "established" an ERISA plan:

> Here, pursuant to the terms of each CBA, nearly all of which contain identical operative language, "an employer" (i.e., each contributing employer) and "an employee organization" (i.e., the unions) "established" a plan to provide "insurance, welfare, Major Medical insurance and similar benefits for" retired employees of the unions. . . . Although not every CBA qualifies as a "plan" under ERISA § 502(a)(3)(B), in view of the plain language of the CBAs at issue here and the [UMM Fund] indenture, Plaintiffs' action to enforce the CBAs is an action to enforce "the terms of [a] plan." 29 U.S.C. § 1132(a)(3)(B).

Miranda II, 785 F. Supp. 2d at 384. True, each CBA directs an employer to contribute money for certain welfare benefits; however, the contributions are

25

not directed to some distinct plan established under the CBA. The contributions are to be made to the Allied Fund, with a portion passed along to the UMM Fund, and the UMM Fund was itself "established" by a 1978 trust indenture that long preceded all the CBAs at issue in this case. Although the CBAs recite some of the provisions found in the Allied Fund and UMM Fund trust documents, those references do not transmute the CBA itself into a plan document; and it certainly does not make the employer contribution requirement, which does not appear in the UMM Fund Trust Indenture, an UMM Fund plan term. It is telling that Congress added section 515 to ERISA in 1980 for the express purpose of creating a federal cause of action for delinquent contributions, see, e.g., Robbins v. B.W. Blaushild Motors, Inc., 559 F. Supp. 1, 2 (D.C. Ill. 1981)--a legislative measure that would have been unnecessary if aggrieved plan trustees could simply sue under ERISA for delinquent contributions as a violation of a plan term.

**III**

The first two claims in the Amended Complaint, which the district court decided in favor of the UMM Fund, identified no legal basis for relief. Though

26

we conclude that these allegations fail to state a claim under ERISA--because the payment terms of the CBAs were not UMM Fund plan terms--these claims do meet the pleading requirements for state law breach-of-contract claims. And because a breach of contract claim was pleaded against a defendant who was later voluntarily dismissed, the Amended Complaint recites supplemental jurisdiction as a proper basis for subject matter jurisdiction. Am. Compl. ¶ 11.

Therefore, rather than reverse and direct dismissal of all the UMM Fund's claims, we vacate the award to the UMM Fund and remand for the district court to consider whether to exercise supplemental jurisdiction over the first two claims, construed as alleging state law breach of contract. The district court had discretion to retain supplemental jurisdiction over such claims after it (properly) dismissed the Section 515 claim. See Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York, 464 F.3d 255, 262-63 (2d Cir. 2006).

Federal courts will normally decline to retain jurisdiction in such circumstances. See id. However, in this case, it may be that discretion will be exercised in favor of retaining jurisdiction, given that most of the relevant contract law issues have already been briefed by the parties and decided in a

27

trio of opinions.[5]

We take no position on whether those issues were correctly decided; and we have no occasion to consider the calculation of the award, or the denial of attorney's fees.

## CONCLUSION

For the foregoing reasons, we vacate the judgment in favor of the UMM Fund, and remand to the district court for further proceedings consistent with this opinion.

---

[5] Treating the remaining claims as contract claims rather than ERISA claims is no mere formality. The 210 Fund may enjoy additional defenses to state law claims for breach of contract, including ERISA preemption. We express no view on the merits of such a defense.

CALABRESI, *Circuit Judge*, concurring in part and dissenting in part:

I concur with Part I of the majority's opinion, in which we affirm dismissal of UMMF's ERISA § 515 claim. I write separately to dissent from Part II of the majority opinion, which concludes that the district court lacked subject matter jurisdiction over UMMF's other claims because the CBAs in question did not constitute an ERISA "plan" under § 502(a)(3)(B).

I dissent for the simple reason that the district court expressly found, as a factual matter, that the language and circumstances of *these* particular CBAs made them an ERISA "plan" under § 502, and this factual finding was not appealed. The district court wrote: "Although not every CBA qualifies as a 'plan' under ERISA § 502(a)(3)(B), in view of the plain language of the CBAs at issue here and the UMMF indenture, Plaintiffs' action to enforce the CBAs is an action to enforce 'the terms of [a] plan.'" *Miranda II*, 785 F. Supp. 2d at 384 (quoting 29 U.S.C. § 1132(a)(3)(B)). However dubious such a finding may be, since the Local 210 Fund did not contest it on appeal, a factual finding it remains, and it gives the district court a proper basis for subject matter jurisdiction under § 502(f).

Were I to decide this issue in the first instance, I might well agree with the majority that these CBAs do not meet § 502(a)'s definition of an ERISA "plan." But I am not prepared to say that there are no circumstances in which a CBA *could ever* be an ERISA "plan," and therefore am not prepared to vacate the district court's decision that, in this instance, it was.

I join the majority in remanding this case to the district court, which, I hope, will decide the remaining claims under state law. I note that if the district court were to find a state law contract breach for the same reasons that it found a violation of ERISA, then the district court would likely reach the same result as before. That is because the district court denied attorney's fees, which, had they been granted, would have been the principal difference between a victory by UMMF on state law grounds and a victory under ERISA.

For these reasons, I concur in Part I of the majority's opinion, respectfully dissent from Part II, and join the majority in remanding the case to the district court for reconsideration of UMMF's remaining claims.

2