Libertarian Party of Erie County v. Cuomo

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2018

(Argued:   February 20, 2019                    Decided:   August 11, 2020)

Docket No. 18-386

_____

LIBERTARIAN PARTY OF ERIE COUNTY, MICHAEL KUZMA, RICHARD COOPER, GINNY ROBER, PHILIP M. MAYOR, MICHAEL REBMANN, EDWARD L. GARRETT, DAVID MONGIELO, JOHN MURTARI, and WILLIAM A. CUTHBERT,

*Plaintiffs-Appellants*,

- v. -

ANDREW M. CUOMO, individually and as Governor of the State of New York, LETITIA JAMES, individually and as Attorney General of the State of New York*, JOSEPH A. D'AMICO, individually and as Superintendent of the New York State Police, MATTHEW J. MURPHY, III, individually and as Niagara County pistol permit licensing officer, DENNIS M. KEHOE, individually and as Wayne County pistol permit

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Letitia James is automatically substituted for former Attorney General Eric T. Schneiderman as a defendant in this case.

licensing officer, and M. WILLIAM BOLLER, individually and as Erie County pistol permit licensing officer,

*Defendants-Appellees.*[**]

_____

Before:   KEARSE, WALKER, and JACOBS, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Western District of New York, Frank P. Geraci, Jr., *Chief Judge*, dismissing, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), plaintiffs' amended complaint brought under 42 U.S.C. § 1983 against various state officials, alleging that New York State's firearm licensing laws, *see* N.Y. Penal Law § 400.00, violate plaintiffs' rights under the Second and Fourteenth Amendments to the Constitution.   The district court dismissed on grounds of mootness or lack of standing the claims of all but two plaintiffs, against all but two defendants, for failure to plead injury-in-fact or traceability of injury to other defendants; dismissed claims for money damages against the two remaining defendants on grounds of judicial and Eleventh Amendment immunity; dismissed individual-capacity claims against those defendants for injunctive relief as barred by 42 U.S.C. § 1983; and dismissed the surviving claims on the grounds that the § 400.00 licensing criteria of "good

[**]   The Clerk of Court is instructed to amend the official caption to conform with the above.

moral character," "good cause," and "proper cause" are not unconstitutionally vague, and that the statutory scheme, while impacting Second Amendment rights, does not burden those rights substantially, closely relates to the State's interests in public safety, and thus survives intermediate scrutiny. On appeal, plaintiffs, while expressly not seeking reversal of the dismissal as to Libertarian Party, principally contend that in dismissing the claims of the individual plaintiffs, the district court erred in its rulings on standing, mootness, and judicial immunity; in applying intermediate scrutiny to the challenged licensing scheme; and in concluding that the challenged statutory criteria for licensing are not impermissibly vague. We have been informed by the parties of events that have rendered the claims of certain plaintiffs moot, requiring dismissal of so much of the appeal as concerns those claims; we otherwise affirm the rulings of the district court principally for the reasons stated by that court, *see* 300 F.Supp.3d 424 (2018).

Appeal dismissed in part and affirmed in part.

> JAMES OSTROWSKI, Buffalo, New York, *for Plaintiffs-Appellants*.

> ANISHA S. DASGUPTA, Deputy Solicitor General, New York, New York (Barbara D. Underwood, Attorney General of the State of New York, Amit

R. Vora, Assistant Solicitor General, New York, New York, on the brief), *for Defendants-Appellees*.

Morrison & Foerster, New York, New York (Jamie A. Levitt, Jayson L. Cohen, Rhiannon N. Batchelder, New York, New York; Hannah Shearer, San Francisco, California, J. Adam Skaggs, David M. Pucino, Giffords Law Center to Prevent Gun Violence, New York, New York, of counsel), *filed a brief for Amicus Curiae Giffords Law Center to Prevent Gun Violence, in support of Defendants-Appellees and Affirmance*.

Clarick Gueron Reisbaum, New York, New York (Nicole Gueron, Ashleigh Hunt, New York, New York, of counsel), *filed a brief for Amicus Curiae Everytown for Gun Safety, in support of Defendants-Appellees and Affirmance*.

KEARSE, *Circuit Judge*:

Plaintiffs Libertarian Party of Erie County ("Libertarian Party") *et al.* appeal from a judgment of the United States District Court for the Western District of New York, Frank P. Geraci, Jr., *Chief Judge*, dismissing, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), their amended complaint brought under 42 U.S.C. § 1983 against several state officials, alleging that the firearm licensing laws of New York

- 4 -

State (the "State" or "New York"), *see* N.Y. Penal Law § 400.00, violate plaintiffs' rights under the Second and Fourteenth Amendments to the Constitution. The district court dismissed on grounds of mootness or lack of standing the claims of all but two plaintiffs, against all but two defendants, for failure to plead injury-in-fact or traceability of injury to other defendants; dismissed claims for money damages against the two remaining defendants on grounds of judicial and Eleventh Amendment immunity; dismissed the individual-capacity claims against those defendants for injunctive relief as barred by 42 U.S.C. § 1983; and dismissed the surviving claims on the grounds that the § 400.00 licensing criteria of "good moral character," "good cause," and "proper cause" are not unconstitutionally vague, and that the statutory scheme, while impacting Second Amendment rights, relates substantially to the State's interests in public safety and thus survives intermediate scrutiny. On appeal, plaintiffs, while expressly not seeking reversal of the dismissal as to Libertarian Party, principally contend that in dismissing the claims of the individual plaintiffs, the district court erred in its rulings on standing, mootness, and judicial immunity; in applying intermediate scrutiny to the challenged licensing scheme; and in concluding that the challenged statutory

criteria for licensing are not impermissibly vague.   For the reasons that follow, we conclude that claims of certain plaintiffs have become moot, requiring dismissal of so much of the appeal as pursues those claims; we otherwise affirm the challenged rulings of the district court, principally for the reasons stated by that court.

## I.   BACKGROUND

The Second Amendment, which applies to the States through the Fourteenth Amendment, *see McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010), provides:   "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed," U.S. Const. amend. II.   In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment codified a pre-existing "individual right to possess and carry weapons in case of confrontation," *id*. at 592.

New York State "maintains a general prohibition on the possession of 'firearms' absent a license."   *Kachalsky v. County of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012) ("*Kachalsky*").   Section 400.00 of New York's Penal Law is the State's

"exclusive statutory mechanism for the licensing of firearms," *id*. (internal quotation marks omitted); other sections of the Penal Law provide criminal penalties for possession of a firearm without a license, *see* N.Y. Penal Law §§ 265.00(3), 265.01 *et seq.*, and 265.20(a)(3).

The State allows an application for a firearm license by a person who resides in the State or whose principal place of business is in the State. *See* N.Y. Penal Law § 400.00(3)(a). The "[t]ypes of licenses" that may be issued include "[a] license for a pistol or revolver" for "a householder" "to . . . have and possess in his dwelling," N.Y. Penal Law § 400.00(2)(a), and a license to "have and carry concealed [a pistol or revolver], without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof," *id*. § 400.00(2)(f). To be granted a license for at-home possession of a firearm, an applicant principally must show "good moral character" and show that "*no good cause* exists for denial of the license." N.Y. Penal Law §§ 400.00(1)(b) and (n) (emphasis added); *id*. § 400.00(2)(a). To obtain a license to carry a concealed firearm in public ("concealed-carry"), one must show, in addition, that "proper

cause" exists for issuance of that license. *Id*. § 400.00(2)(f). A concealed-carry permit encompasses an at-home license. *See id*.

A. *The Parties*

The present action was brought by plaintiffs Libertarian Party and several New York residents. According to the amended complaint ("Complaint" or "Comp."), Libertarian Party is an association "whose platform includes support for the right to bear arms" (Comp. ¶ 3). The Complaint contains no other allegations about Libertarian Party. The individual plaintiffs (collectively "Plaintiffs") are Michael Kuzma, Richard Cooper, Ginny Rober, Philip M. Mayor, Michael Rebmann, Edward L. Garrett, David Mongielo, John Murtari, and William A. Cuthbert, who claim that various aspects of New York's firearm licensing regime violate their rights under the Second and Fourteenth Amendments to bear arms.

The defendants are Andrew M. Cuomo, Governor of the State; Letitia James, the State's Attorney General; Joseph A. D'Amico, Superintendent of the State Police; Matthew J. Murphy III, a judge who is the pistol permit licensing

officer for Niagara County; Dennis M. Kehoe, a judge who is the pistol permit licensing officer for Wayne County; and M. William Boller, an Acting State Supreme Court Justice who is the pistol permit licensing officer for Erie County. (*See, e.g.*, Comp. ¶¶ 14-22.)

B.  *The Complaint*

Plaintiffs contend that the right to bear and carry firearms is a "fundamental" Second Amendment right that the State has no authority to license (Comp. ¶¶ 33-62).  The Complaint alleged principally that the New York licensing scheme on its face (1) violates Plaintiffs' rights to possess firearms in their homes (*see id*. ¶ 137), (2) violates their rights to possess firearms in public (*see id*. ¶ 138), and (3) uses standards of "good moral character," "proper cause," and "good cause" that are so vague as to violate the Due Process Clause of the Fourteenth Amendment (*id*. ¶¶ 139-141).

As to individual plaintiffs, the Complaint alleged that Mayor and Cuthbert "have obtained . . . pistol permits but remain under constant threat of having their licenses revoked based on application of the arbitrary and subjective

criteria set forth in the statute." (Comp. ¶ 77.) The license granted to Cuthbert by Justice Boller was an at-home permit that allowed him to use the firearm for hunting and target shooting; but Cuthbert was denied a concealed-carry permit. (*See id*. ¶ 94.) The Complaint alleged that Mongielo held a concealed-carry permit which, after his arrest, was suspended by Judge Murphy. It alleged that the suspension was "temporar[y]." (*Id*. ¶ 81; *see also* Declaration of New York State Assistant Attorney General William J. Taylor, Jr., dated April 29, 2016 ("Taylor Decl."), Exhibit C (Niagara County Court Order signed by Judge Murphy, ordering reinstatement of Mongielo's permit)).

The Complaint alleged that Murtari applied for a pistol permit (Comp. ¶ 96), but that his application was denied by Judge Kehoe (*id*. ¶ 97). The 10-paragraph letter of denial stated, *inter alia*, that Murtari's record showed that from 1998 through 2010 he had been arrested "approximately 50 times" and that Murtari's "prior conduct in failing to obey lawful orders issued in the Federal Court System, as well as in the State Family Court System, constitutes 'good cause' for this Court to deny [his] application for a pistol permit at this time." (*Id*. ¶ 98.)

As to plaintiffs Kuzma, Cooper, Rober, Rebmann, and Garrett, the Complaint contained no allegation that any of them had ever applied for a pistol permit.

The Complaint principally sought "injunctive and declaratory relief" (Comp. ¶ 76) and "compensatory and punitive damages" (*id*. ¶ 135). Murtari also requested an order, pursuant to N.Y. C.P.L.R. Article 78, directing Judge Kehoe to issue him a pistol permit. (*See id*. ¶¶ 142-144.)

C. *The District Court's Dismissal of the Action*

Defendants moved pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim. Under Rule 12(b)(1) they argued, *inter alia*, (1) that Libertarian Party, Kuzma, Cooper, Rober, Rebmann, and Garrett lack standing, having failed to apply for a firearm license or to allege that applying would have been futile; (2) that Mayor and Mongielo lack standing because they hold licenses, and that any fear of revocation is speculative; and (3) that Cuthbert

- 11 -

lacks standing to challenge provisions governing at-home possession, because he has a license for such possession.

Under Rules 12(b)(1) and 12(b)(6), defendants argued that Plaintiffs could not obtain relief against Cuomo, James, and D'Amico because the Complaint did not show that those defendants had any direct involvement in administering the challenged statutory provisions. And under Rule 12(b)(6), defendants argued that Cuthbert's claim with respect to the denial of his request for a concealed-carry permit, and all of Murtari's claims, fail because the statutory criteria governing the granting of permits are not impermissibly vague, and the New York firearm licensing provisions substantially relate to the State's interests in public safety, thus surviving intermediate scrutiny. Defendants also argued that Justice Boller and Judges Murphy and Kehoe, as sued in their official capacities, are entitled to Eleventh Amendment immunity from claims for damages; and that because they act in a judicial capacity in ruling on firearm license applications, they are, insofar as they are sued in their individual capacities, entitled to judicial immunity from Plaintiffs' claims for damages or injunctive relief.

In a thorough opinion dated January 10, 2018 ("D. Ct. Opinion"), reported at 300 F.Supp.3d 424, relying principally on the Supreme Court's decision in *Heller* and this Court's decisions in *New York State Rifle & Pistol Association, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015) ("*NYSRPA*"); *Kachalsky*, 701 F.3d 81; *United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012) ("*Decastro*"); and *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091 (2d Cir. 1997) ("*Jackson-Bey*"), the district court granted defendants' motion in its entirety.

Because plaintiffs' response to defendants' motion to dismiss made no argument with respect to Libertarian Party, the district court dismissed any claims on behalf of Libertarian Party on the ground that they had been abandoned. With respect to the three federal claims asserted in the Complaint, the court found that most of the plaintiffs lacked standing to sue, either in general because of their own inaction, or with respect to certain defendants to whom their asserted injuries were not traceable. As to the plaintiffs who had standing, the court found that the Complaint failed to state a claim on which relief can be granted.

1. *Standing*

The court noted that, in order to have standing to sue in federal court, a plaintiff must show

> (1) *injury-in-fact*, which is a "concrete and particularized" harm to a "legally protected interest"; (2) *causation* in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief.

D. Ct. Opinion, 300 F.Supp.3d at 432 (quoting *W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (emphasis in *W.R. Huff*)); *see, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Further, each plaintiff must establish standing with respect to each claim he or she asserts, *see* D. Ct. Opinion, 300 F.Supp.3d at 432; and standing must be maintained throughout the proceeding, *see, e.g., id.* A federal court loses jurisdiction to entertain a claim that has become moot. *See, e.g., id.*

In order to challenge the New York firearm licensing laws, a person must either have applied for and been denied a license or make a "'substantial showing'" that his or her application "'would have been futile,'" *Decastro*, 682 F.3d at 164 (quoting *Jackson-Bey*, 115 F.3d at 1096). Mere objection or antipathy to the law does not constitute a showing of futility. *See*, *e.g.*, *Decastro*, 682 F.3d at 164; D. Ct. Opinion, 300 F.Supp.3d at 433.

The district court noted that the Complaint "contain[ed] no factual allegations as to . . . Kuzma, Cooper, Rober, Rebmann, or Garrett." D. Ct. Opinion, 300 F.Supp.3d at 431. There being neither allegations that they had applied for a license nor allegations to show futility, the court dismissed the claims of those plaintiffs for lack of any alleged injury-in-fact. *See id*. at 433.

The court also found that Mayor, who had applied for and received the permit for which he applied, lacked an injury-in-fact. Although the Complaint alleged that Mayor was afraid his license would be arbitrarily revoked, the court found such speculation insufficient to show injury-in-fact. *See id*. at 434. Similarly, Mongielo, who was alleged to have been granted a license but had it

"temporarily" suspended following his arrest, lacked standing because his license had subsequently been reinstated. *See id*. at 434-35.

The court found that Cuthbert, who had applied for a concealed-carry permit but had been granted only an at-home permit, lacked standing to complain of the New York licensing scheme with respect to at-home licenses. His alleged fear that his at-home permit would be revoked was merely speculative, failing to show injury-in-fact. *See id*. at 435. However, Cuthbert sufficiently alleged injury-in-fact as to his request for a concealed-carry permit, which had been denied. *See id*.

Finally, as to Murtari, the court found that he had alleged injury-in-fact because he had applied for a license and his application had been denied. *See id*. at 436.

Although the court found that the Complaint was sufficient to show that Cuthbert and Murtari asserted claims of injury-in-fact, it found that there was no allegation that their claimed injuries had been inflicted by any persons other than the defendants who had denied their respective license requests. Cuthbert's request for a concealed-carry permit had been denied by Justice Boller; Murtari's

license application had been denied by Judge Kehoe. Accordingly, the court found that the claims of Cuthbert and Murtari--the only plaintiffs who asserted injury-in-fact--were traceable only to Justice Boller and Judge Kehoe, respectively. *See id.* The court therefore dismissed the Complaint against Cuomo, James, D'Amico, and Murphy. *See id.*

2. *Judicial Immunity*

As to Boller and Kehoe, the remaining defendants, the district court noted that judges performing judicial duties, when sued in their individual capacities, are entitled to immunity both from claims for damages, *see* D. Ct. Opinion, 300 F.Supp.3d at 436-37 (citing *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) ("*Bliven*")), and, by reason of the 1996 amendments to § 1983, from claims for "injunctive relief, unless a declaratory decree was violated or declaratory relief was unavailable," D. Ct. Opinion, 300 F.Supp.3d at 436 (internal quotation marks omitted); *see* Pub.L. 104-317, Title III, § 309(c), Oct. 19, 1996, 110 Stat. 3853; 42 U.S.C. § 1983 ("in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be

granted unless a declaratory decree was violated or declaratory relief was unavailable").

Although Plaintiffs challenged the applicability of these principles, contending that deciding firearms license applications is an administrative act, not a judicial one, the court rejected that contention. It pointed out that except as to New York City and Long Island, the State's statutory scheme places the authority to decide "firearms license applications" in "state judges," D. Ct. Opinion, 300 F.Supp.3d at 437 n.9; that "[t]he principal hallmark of the judicial function is a decision in relation to a particular case," *id*. at 437 (internal quotation marks omitted); *see Bliven*, 579 F.3d at 211; and that each of the decisions by Justice Boller and Judge Kehoe "arose out of an individual case before them," D. Ct. Opinion, 300 F.Supp.3d at 437. Concluding that those rulings had "all the hallmarks of judicial acts," *id*., the court dismissed all claims asserted against Boller and Kehoe in their individual capacities on the ground of judicial immunity.

### 3. *Eleventh Amendment Immunity*

Finally as to the claims of Cuthbert and Murtari against Justice Boller and Judge Kehoe in their official capacities, defendants moved to dismiss the claims for damages, contending that those claims are barred by the Eleventh Amendment. The court, noting that Plaintiffs had made no response to that contention, dismissed those claims against Boller and Kehoe. *See* D. Ct. Opinion, 300 F.Supp.3d at 438. Noting that defendants had made no similar Eleventh Amendment motion to dismiss official-capacity claims against the judges for injunctive relief, the court concluded that those claims by Cuthbert and Murtari against Boller and Kehoe remained pending for consideration of whether the Complaint stated a claim on which relief can be granted. *See id*.

### 4. *The Due Process Vagueness Contention*

Finding that Cuthbert and Murtari had standing to bring one or all of their claims, the court turned to their claims of denial of due process. The Complaint alleged that the New York licensing scheme is unconstitutionally vague principally because § 400.00 premises the grant of licenses on "good moral

- 19 -

character" and on the absence of "good cause" for denial, and that those terms are "not capable of definition in such a way that puts an applicant, a licensing officer or a reviewing court on notice of the meaning of the terms." (Comp. ¶¶ 139-141.) The district court, stating that "[a] claim is as-applied if it is limited to a plaintiff's particular case," but "is facial if it 'challenges application of the law more broadly,'" D. Ct. Opinion, 300 F.Supp.3d at 439 (quoting *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010)); *see also NYSRPA*, 804 F.3d at 249-50, found that the Complaint painted with a broad brush and did not allege any facts to support an as-applied vagueness claim. Thus, the court read the Complaint to assert that the statute is facially invalid.

The court stated that "'[t]o succeed on a facial challenge, the challenger must establish that *no set of circumstances* exists under which the [laws] would be valid.'" D. Ct. Opinion, 300 F.Supp.3d at 439 (quoting *NYSRPA*, 804 F.3d at 265 (emphasis in *NYSRPA*), and citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). The district court noted that defendants here provided compelling examples of circumstances that would show an applicant's lack of "good moral character," show "good cause" for the denial of a license, or show lack of "proper

cause" for approval to carry a concealed firearm in public--to wit, an individual suffers from dementia and paranoid schizophrenia; or an individual threatens to harm others, or shoots himself, or has an alcohol or drug addiction and repeatedly engages in reckless activity with his firearm while intoxicated. *See* D. Ct. Opinion, 300 F.Supp.3d at 440.

Referring to the observation in *Heller* that longstanding restrictions such as "prohibitions on the possession of firearms by felons and the mentally ill" are "presumptively lawful regulatory measures," 554 U.S. at 626 & n.26, the district court concluded that Cuthbert and Murtari had obviously failed to show that no set of circumstances exists under which the conditions imposed in § 400.00 would be valid. *See generally Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) (in order to succeed in "challeng[ing a law] on its face as unduly vague, in violation of due process," the plaintiff "must demonstrate that the law is impermissibly vague in all of its applications").

5. *The Second Amendment Burden*

As to Plaintiffs' claims that the New York licensing scheme is unconstitutional under the Second Amendment purely because it limits their rights to possess and carry firearms, the court noted that *Heller* established that the Second Amendment codified an individual's right to possess and carry weapons "in common use" by citizens for "lawful purposes like self-defense," *Heller*, 554 U.S. at 624. *See* D. Ct. Opinion, 300 F.Supp.3d at 440. While *Heller* neither purported to make that right immune from all regulation nor attempted to lay out the permissible scope of such regulation, the district court noted that a two-step framework for analysis in this Circuit had been established by *Decastro*, *Kachalsky*, and *NYSRPA*:

> The Court must consider (1) whether the law burdens conduct protected by the Second Amendment, and then (2) the appropriate level of scrutiny. *See NYSRPA*, 804 F.3d at 254. Of course, if the law does not burden conduct protected by the Second Amendment, it stands. *Id*.

D. Ct. Opinion, 300 F.Supp.3d at 441.

Finding, at step one, that New York's licensing laws unquestionably place restrictions on the possession of firearms "in common use," as individuals in

New York may not possess handguns, even in their own homes, without a license, the court concluded that these laws burden law-abiding citizens' possession of weapons typically kept for lawful purposes. *Id*. at 441-42.

In determining what level of scrutiny to apply to New York's firearms licensing laws, the court considered (a) how close the law comes to the core of the Second Amendment right, and (b) the severity of the law's burden on the right. *Id*. at 442-43. In considering the latter factor, the court noted that heightened scrutiny is appropriate only where the law burdens Second Amendment protections "substantially," *NYSRPA*, 804 F.3d at 259, and that the burden is not substantial "if adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense," *id*. (quoting *Decastro*, 682 F.3d at 168). D. Ct. Opinion, 300 F.Supp.3d at 442.

Accordingly, the district court inferred that "where a law does not prevent law-abiding, responsible citizens from possessing firearms in defense of hearth and home, it does not substantially burden the core Second Amendment right." *Id*. (internal quotation marks omitted). The court concluded that "[w]hile [the State's] firearms licensing laws implicate the core Second Amendment right,

- 23 -

they do not substantially burden it. The licensing laws place no more than 'marginal[ or] incremental . . . restraint on the right to keep and bear arms.'" *Id*. at 442-43 (quoting *NYSRPA*, 804 F.3d at 259; *Decastro*, 682 F.3d at 166). The district court pointed out that, here,

> [a]s Plaintiffs note, law-abiding, responsible citizens face nothing more than time, expense, and questioning of close friends or relatives. [Complaint] ¶¶ 68-72. It is only the narrow class of persons who are adjudged to lack the characteristics necessary for the safe possession of a handgun that face a substantial burden on the core Second Amendment protection via [New York's] firearms licensing laws.

D. Ct. Opinion, 300 F.Supp.3d at 443 (internal quotation marks omitted). The court stated that

> Plaintiffs' own experiences support the Court's conclusion. It is only Murtari who was denied a license to possess a firearm in his home. . . . Murtari plainly fits into the narrow class of persons . . . [who have] shown repeated indifference for laws at the state and federal level. *See* [Complaint ¶ 98 quoting] (letter from Judge Kehoe denying Murtari's application for a firearms license in full because he was arrested approximately fifty times, had received four jail sentences totaling over four months in jail, and repeatedly refused to make child support payments).

*Id*. at 443 (internal quotation marks omitted).

Concluding that the New York licensing scheme does not impose a burden that is substantial, the court determined that an intermediate level of scrutiny was appropriate. Under that level of scrutiny, the question is whether the laws are "substantially related to the achievement of an important government interest." *Id*. (quoting *NYSRPA*, 804 F.3d at 261; *Kachalsky*, 701 F.3d at 96).

The district court found that New York "[u]nquestionably" has "'substantial, indeed compelling, governmental interests in public safety and crime prevention,'" D. Ct. Opinion, 300 F.Supp.3d at 443 (quoting *NYSRPA*, 804 F.3d at 261), and that the State's firearms licensing laws are substantially related to that governmental interest. They are designed to allow only law-abiding, responsible citizens to possess a firearm, and to ensure that classes of individuals who do not have the necessary character and qualities are not. *See* D. Ct. Opinion, 300 F.Supp.3d at 443-44.

6. *Murtari's State-Law Claim*

Finally, the district court noted that Murtari asked the court to conduct a proceeding under New York law, N.Y. C.P.L.R. Article 78, and rule that

Judge Kehoe was required to grant his application for a firearm license. Having dismissed all of Plaintiffs' federal claims, and noting that it was questionable whether federal courts had authority to conduct such a proceeding, the court declined to exercise supplemental jurisdiction to entertain Murtari's Article 78 claim. *See* D. Ct. Opinion, 300 F.Supp.3d at 444.

D. *Post-Dismissal Developments*

Shortly before oral argument of this appeal, Plaintiffs' counsel informed this Court of developments since the inception of the action. Plaintiff Rober has died; plaintiff Kuzma has obtained a firearm license; and plaintiff Cuthbert has "moved out of New York State and now resides in Colorado" (Letter from James Ostrowski dated February 15, 2019, at 1).

In light of the fact that, neither in this Court nor in the district court, has any successor or representative sought to be substituted for Rober, we deem it appropriate to dismiss as moot so much of this appeal as purports to pursue her claims. *See* Fed. R. App. P. 43(a)(1) and (2); Fed. R. Civ. P. 25(a)(1). As to so much of the appeal as pursues claims of Kuzma and Cuthbert, we conclude that

their claims have become moot or untenable largely for reasons found applicable to other plaintiffs, as discussed in Parts II.B. and C. below.

## II.  DISCUSSION

On appeal, the individual plaintiffs principally contend that the district court erred in its rulings on standing, mootness, judicial immunity, and traceability of their claims to the nonjudicial defendants; in concluding that the challenged statutory criteria for licensing are not impermissibly vague; in applying intermediate scrutiny to the challenged licensing scheme; and in concluding that the statute survives such scrutiny.  For the reasons that follow, we conclude that these rulings of the district court were correct.

### A.  *Standard of Review*

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal quotation marks omitted). A written instrument that is incorporated in the complaint by reference is deemed part of the complaint, *see, e.g., Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992); *Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1327 (4th ed. 2020), and thus may properly be considered by the district court in ruling on a Rule 12(b)(6) motion. Further, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d at 47; *see, e.g., Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

In ruling on a motion to dismiss under Rule 12(b)(1) for lack of statutory or constitutional power to adjudicate the action, the district court "may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The burden of proving subject matter jurisdiction is on the plaintiff. *Id.*

We review grants of Rule 12(b)(6) and 12(b)(1) motions to dismiss *de novo*. *See Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017); *Katz v. Donna Karan Co.*, 872 F.3d 114, 118 (2d Cir. 2017). To the extent that the Complaint was dismissed for lack of subject matter jurisdiction, we may consider matters outside the Complaint that were presented to the district court. *See, e.g., Mitchell v. Fishbein*, 377 F.3d 157, 167-68 (2d Cir. 2004) ("*Mitchell*").

We review a district court's decision declining to exercise supplemental jurisdiction over a state-law claim for abuse of discretion. *See, e.g., Klein & Co. Futures v. Board of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006). In this case--without need for discussion--we see no abuse of discretion in the district court's decision to decline to conduct a State-law Article 78 proceeding.

B. *Subject Matter Jurisdiction: Standing, Mootness, and Traceability*

> No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. . . . The concept of standing is part of this limitation.

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 37 (1976). As

recognized by the district court,

> the irreducible constitutional minimum of standing contains
> three elements. First, the plaintiff must have suffered an
> "injury in fact"--an invasion of a legally protected interest which
> is (a) concrete and particularized . . . and (b) actual or
> imminent, *not conjectural* or hypothetical . . . . *Second*, there
> must be a causal connection between the injury and the conduct
> complained of--*the injury has to be fairly . . . trace[able] to the
> challenged action of the defendant* . . . . Third, it must be likely, as
> opposed to merely speculative, that the injury will be redressed
> by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (other internal quotation marks omitted) (emphases ours).

 If, as to a claim, any of these three elements is missing, the federal court lacks

jurisdiction to entertain the claim. *See, e.g., id.* at 561.

Further, "[t]he usual rule in federal cases is that an actual controversy

must exist at stages of appellate or certiorari review, and not simply at the date the

action is initiated." *Roe v. Wade*, 410 U.S. 113, 125 (1973). Thus, a plaintiff must

show a "personal stake" in the outcome "throughout the life of the lawsuit." *Cook

v. Colgate University*, 992 F.2d 17, 19 (2d Cir. 1993). A matter that has become

moot is no longer a case or controversy, and a federal court loses jurisdiction to

entertain it. *See, e.g., DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974).

"'As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy.'" *Decastro*, 682 F.3d at 164 (quoting *Jackson-Bey*, 115 F.3d at 1096; and citing *Allen v. Wright*, 468 U.S. 737, 746 (1984), and *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-68 (1972)). Accordingly, we have held that, absent a showing of futility, a person who has "failed to apply for a gun license in New York . . . lacks standing to challenge the licensing laws of the state," *Decastro*, 682 F.3d at 164.

Within this legal framework, the district court properly dismissed for lack of standing (a) the claims of all plaintiffs who were not alleged to have applied for a New York State firearm license, including Cooper, Rebmann, and Garrett, and (b) the claims of Mayor who received a license. None of these plaintiffs showed that they suffered injury-in-fact.

The court also properly dismissed the claims of Mongielo, who received a license, which had been temporarily suspended when he was arrested but then had been reinstated after all but one of the charges against him were dismissed. Having had his license restored, Mongielo's challenges to the licensing system were moot. Assertions that Mongielo, Mayor, and Cuthbert

feared their licenses would be revoked were speculative, such apprehensions being insufficiently concrete to constitute injury-in-fact.

In addition, while the district court also dismissed the claims of Kuzma on the ground that he had failed to apply for a license, we have been informed, as indicated in Part I.D. above, that Kuzma has now obtained a license. Kuzma's claims--nonexistent at the start of this action--have become moot, and we dismiss so much of the appeal as challenges the district court's dismissal of his claims.

Although the district court found that Cuthbert had standing to challenge the denial of his application for a concealed-carry license, we are informed that Cuthbert has moved out of New York and become a resident of Colorado. As a nonresident of New York whose principal place of employment is not in New York, he has thereby become ineligible to apply for a firearm license, *see* N.Y. Penal Law § 400.00(3)(a). Accordingly, any request by Cuthbert for injunctive relief has become moot. To the extent that he asserted claims for money damages with respect to the denial of a concealed-carry license, those claims were properly dismissed for reasons discussed in Part II.C. below.

Finally, we see no error in the district court's determination that as to the surviving claims of Cuthbert and the claims of Murtari--the only two plaintiffs as to whom there was any showing of injury-in-fact--the only defendants to whom their alleged injuries were fairly traceable were the judges who denied their respective applications. None of the other defendants was alleged to have had any role in the licensing process or in the consideration of the applications of Cuthbert or Murtari. The district court thus properly dismissed the claims asserted against defendants Cuomo, James, D'Amico, and Murphy.

C. *Eleventh Amendment and Judicial Immunities*

An action against a state official in his official capacity is deemed an action against the state itself, *see, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991), which possesses sovereign immunity under the Eleventh Amendment, *see* U.S. Const. amend. XI. While the immunity conferred by that Amendment "is not coextensive with the limitations on judicial power in Article III," it places "a limitation on the federal court's judicial power." *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998). Although the Eleventh Amendment does not bar a federal court,

in adjudicating federal claims against state officials in any capacity, from granting prospective injunctive relief, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 105 (1984); *Ex parte Young*, 209 U.S. 123, 159-60 (1908), a state official sued in his official capacity is entitled to invoke Eleventh Amendment immunity from a claim for damages, *see, e.g., Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985); *Hafer*, 502 U.S. at 25.

In the present case, defendants invoked the Eleventh Amendment in moving to dismiss, *inter alia*, the claims against Justice Boller and Judge Kehoe in their official capacities for money damages. Given the above principles, the district court properly granted that motion.

The court also dismissed the claims of Cuthbert and Murtari against Justice Boller and Judge Kehoe in their individual capacities for damages or for equitable relief on the ground that judges are entitled to absolute immunity for performance of judicial functions. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (damages); 42 U.S.C. § 1983 (injunctive relief). The court rejected Plaintiffs' contention that, in ruling on firearm license applications, Boller and Kehoe

performed only an administrative function, not a judicial one. Plaintiffs pursue this contention on appeal. We are not persuaded.

Absolute immunity for a judge performing his or her judicial functions

> is conferred in order to insure "that a judicial officer, in exercising the authority vested in him shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Bliven*, 579 F.3d at 209 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)).

Entitlement to absolute immunity does not depend on the individual's title or on the office itself. *See*, *e.g.*, *Forrester v. White*, 484 U.S. 219, 228 (1988). A judge may perform tasks that are not essentially judicial, such as supervising and managing court employees, which do not warrant absolute immunity, *see*, *e.g.*, *id*. at 228-29; on the other hand, such immunity may be warranted for a person who is not a judge but whose duties are quasi-judicial, *see*, *e.g.*, *Butz v. Economou*, 438 U.S. 478, 513-14 (1978). Further, other considerations may prevent even persons who are deciding disputes from being accorded absolute immunity. *See*, *e.g.*, *Cleavinger v. Saxner*, 474 U.S. 193, 202-06 (1985) (prison disciplinary committee, though adjudicating disciplinary accusations, held

- 35 -

not entitled to absolute immunity as quasi-judicial officers where, *inter alia*, the committee members were prison officials who had an intertangled relationship with the accusing prison officials, and, at the time of the events at issue, there were few procedural safeguards for the accused). Nor does a determination as to whether a proceeding is judicial in nature depend on the formality or informality with it was conducted, or on whether the proceeding was adversary or *ex parte*. *See*, *e.g.*, *Stump v. Sparkman*, 435 U.S. 349, 363 & n.12 (1978).

Rather, the entitlement of a judge to absolute immunity depends on the nature of the function being performed. Judges are entitled not to absolute immunity, but to at most a qualified immunity, with respect to acts that are administrative, such as employment decisions, *see*, *e.g.*, *Forrester*, 484 U.S. at 228-29. "Administrative decisions, even though they may be essential to the very functioning of the courts, have not . . . been regarded as judicial acts." *Id*. at 228.

Judicial acts principally involve adjudication of particularized, existing issues. Thus, some functions may be viewed as judicial acts when performed in the context of a particular case but as administrative when performed for the purpose of overall management in anticipation of future cases.

For example, empaneling a jury in a particular criminal trial is a quintessentially judicial act, *see White v. Bloom*, 621 F.2d 276, 279-80 (8th Cir.), *cert. denied*, 449 U.S. 995 (1980) (judge held to have absolute immunity from a claim of conspiracy to empanel an all-white trial jury), whereas compilation of an annual list of county residents believed to be qualified for jury duty is an act that is ministerial, *see Ex parte Virginia*, 100 U.S. (10 Otto) 339, 348 (1879) (no absolute immunity from claim of racial discrimination in the compilation).

Similarly, the act of disbarring an attorney as a sanction for the attorney's contumacious conduct in connection with a particular case is a judicial act, *see Bradley v. Fisher*, 80 U.S. (13 Wall.) at 354-57 (judge entitled to absolute immunity), whereas a committee, in making decisions as to additions to or deletions from a roster of attorneys deemed qualified to represent indigent defendants accused of crimes, unconnected to any particular criminal prosecution, is not performing a quasi-judicial function, *see, e.g., Mitchell*, 377 F.3d at 172-74 (no absolute immunity).

In determining a jurisdictional issue that depended on "whether a particular proceeding before another tribunal was *truly judicial*," *District of*

*Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 n.13 (1983) (internal quotation marks omitted) (emphasis ours), the Supreme Court stated that the form of the proceeding is less significant than the proceeding's nature and effect, *see id*. at 478.   It concluded that where there was a petition for "a declaration on rights as they stand," and in that context the court had "taken cognizance of the petition," had "considered the petitioner's petition on its merits," and had issued "an order which [was] validated by the signature of the presiding officer," there was a decision that was truly judicial.   *Id*. (internal quotation marks omitted).

Here, the applications of those plaintiffs who requested a firearm license were ruled on by the judge who was the licensing officer for the applicant's county of residence.   Actual rulings on such applications--referred to in the Complaint, some of which have been submitted by defendants in support of the motion to dismiss--directly addressed the specific applications, referred to relevant requirements of § 400.00, and decided the merits of the applicants' requests.   For example, in ruling on the application of Cuthbert, Justice Boller caused to be entered a signed order of the "State of New York, Supreme Court: County of Erie" (*see* Appendix hereto), stating as follows:

After a full review of the application for an unrestricted firearms license pursuant to Section 400.00 of the New York State Penal Law, the Court has determined that the applicant has sufficient basis to be granted a firearms license for hunting and target shooting. Applicant has not demonstrated sufficient *proper cause* to be granted an unrestricted firearms license as required by section 400.00-2(f) of the New York State Penal Law.

A firearms license restricted to hunting and target shooting as set forth above is therefore GRANTED to the applicant.

SO ORDERED.

(Taylor Decl. Exh. D (emphasis added); *see also id*. Exh. C ("Order" of the "State of New York, County of Niagara, Niagara County Court, In the Matter of the Pistol Permit of David J. Mongielo," signed by Judge Murphy, stating that, "this Court . . . having determined that *no good cause* exists to continue the suspension of said Pistol Permit license; it is now ORDERED, that the Pistol Permit in question be reinstated . . . ." (emphasis added) (reproduced in Appendix hereto)).)

While Judge Kehoe informed Murtari of the decision to deny his application by way of a letter on a State of New York, Wayne County Court letterhead rather than in an order (*see* Taylor Decl. Exh. E), the 10-paragraph letter directly ruled on the application, referring in detail to the factual and statutory basis for the denial. It recounted, *inter alia*, the Judge's examination of the

documents submitted by Murtari in support of the application and the Judge's communicating with the United States Attorney for the Northern District of New York pursuant to Murtari's request, along with the Judge's consideration of Murtari's approximately 50 arrests, including four for trespasses in violation of a federal court order, resulting in Murtari's being sentenced to a total of 142 days in jail, and his six months of incarceration "on at least one occasion" for nonpayment of child support--all leading to the conclusion that Murtari's prior conduct provided "'*good cause*' for this Court to deny your application for a pistol permit at this time."   (Comp. ¶ 98 (emphasis added).)

We conclude that the district court did not err in determining that the rulings on firearm license applications were judicial decisions and that Justice Boller and Judge Kehoe--the only defendants against whom traceable claims were asserted by plaintiffs with standing to sue--are entitled to absolute immunity from the claims asserted against them in their individual capacities.

The judicial-immunity-based dismissal of all of the individual-capacity claims, along with the Eleventh Amendment dismissal of official-capacity claims for damages, left pending only the official-capacity claims

of Murtari for injunctive relief against Judge Kehoe for the denial of any license and the official-capacity claim of Cuthbert for injunctive relief against Justice Boller for the denial of a concealed-carry license (Cuthbert having been granted an at-home permit). However, while Cuthbert may have had standing at the time of the district court's decision to pursue such injunctive relief against Justice Boller in his official capacity, the fact that Cuthbert has now moved out of New York and become a resident of Colorado, *see* Part I.D. above, makes him ineligible for a New York firearm license, *see* N.Y. Penal Law § 400.00(3)(a). Thus that claim has become moot, and we accordingly dismiss so much of this appeal as pursues it.

The only remaining claims in the Complaint are those of Murtari against Judge Kehoe in his official capacity seeking injunctive relief for denial of Murtari's license application, on the grounds that § 400.00 is facially void for vagueness or unduly impinges on Murtari's Second Amendment rights.

D.  *The Due Process Void-for-Vagueness Claim*

The Complaint alleged that New York Penal Law § 400.00's uses of the terms "good moral character" as a prerequisite for approval of a firearm

license, "proper cause" for the issuance of a concealed-carry permit, and "good cause" for the denial of a license violate due process, arguing that "these terms are not capable of definition in such a way that puts an applicant, a licensing officer or a reviewing court on notice of the meaning of the terms" (Comp. ¶¶ 139-140). The district court correctly rejected this claim.

The "void-for-vagueness doctrine provides that no one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *NYSRPA*, 804 F.3d at 265 (internal quotation marks and alterations omitted). It requires that statutes define regulated conduct with "sufficient definiteness that ordinary people can understand"; but it does not demand "meticulous specificity . . . , recognizing that language is necessarily marked by a degree of imprecision." *Id*. (internal quotation marks omitted).

To sustain a facial vagueness challenge, a plaintiff "'must establish that *no set of circumstances* exists under which the Act would be valid.'" *NYSRPA*, 804 F.3d at 265 (quoting *Salerno*, 481 U.S. at 745 (emphasis in *NYSRPA*)). Given this standard, a "facial challenge . . . is 'the most difficult challenge to mount successfully.'" *NYSRPA*, 804 F.3d at 265 (quoting *Salerno*, 481 U.S. at 745).

Plaintiffs' contention that § 400.00 is unconstitutionally vague is based on their argument that the Supreme Court in *Heller* ruled that a limitation on the right to bear arms could properly be grounded "only [on] the commission of felonies or an adjudication of mental disability" (Plaintiffs' brief on appeal at 34), and that the § 400.00 statutory phrases "'good moral character,'" "'proper cause,'" and "'good cause'" go "beyond" those two grounds (*id.*). But *Heller* did not purport to impose that limitation. The *Heller* Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," 554 U.S. at 626; and it added that it was "identify[ing] these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive," *id.* at 627 n.26. Indeed, Plaintiffs' brief itself states that the Supreme Court set forth "grounds for denying" the Second Amendment right to bear arms, "*including* mental illness and felonious criminality" (Plaintiffs' brief on appeal at 34 (emphasis added)).

As the district court pointed out, defendants proffered examples of several sound bases--in addition to mental illness and felony convictions--for denying an applicant's request to possess a firearm, such as his threats to harm others, or his addiction to drugs, or his repeatedly reckless conduct with a weapon while intoxicated. Such examples are not beyond an ordinary person's comprehension; nor are they rare, *see*, *e.g.*, *Robertson v. Kerik*, 300 A.D.2d 90, 90-91, 751 N.Y.S.2d 469, 469-70 (1st Dep't 2002) (upholding firearm license revocation for lack of "good moral character" due to the holder's "poor judgment and inability to manage his anger" as shown by his "assault[ing] his girlfriend"); *Broadus v. City of New York Police Department (License Division)*, 62 A.D.3d 527, 528, 878 N.Y.S.2d 738, 739 (1st Dep't 2009) (determination of lack of "good moral character" was supported by applicant's arrest for "driving while intoxicated" and possessing "a loaded firearm when arrested").

That such circumstances have direct implications for determinations of "good moral character," "proper cause," and "good cause" is easily understandable. Indeed, despite the presence of those challenged terms in New York's licensing regime for more than a century, *see*, *e.g.*, *Kachalsky*, 701 F.3d at 85,

Plaintiffs have identified no "evidence of confusion"; and the "repeated use for decades, without evidence of mischief or misunderstanding . . . suggests that the language is comprehensible," *NYSRPA*, 804 F.3d at 267, 268.

The district court did not err in concluding that the Complaint failed to set forth a plausible claim that § 400.00 is impermissibly vague.

E. *The Second Amendment Claim*

Finally, the Complaint alleged that New York Penal Law §§ 400.00 and 265.00 violate the Second Amendment (1) by conditioning the right to obtain an at-home permit on "'good moral character,' integrity and the absence of 'good cause' to deny a license" (Comp. ¶ 137(b)); and (2) by requiring those conditions plus a showing of "'proper cause'" in order to obtain a concealed-carry permit (*id*. ¶¶ 138(a) and (c)). The challenge to the "'proper cause'" prerequisite for obtaining a concealed-carry permit is foreclosed by this Court's decision in *Kachalsky*, 701 F.3d at 97-101. Although Plaintiffs contend that *Kachalsky* was wrongly decided, it remains binding precedent.

The challenge to the "good moral character" and "good cause" requirements for obtaining an at-home permit, on analysis, fares no better. As indicated in Part II.D. above, the Supreme Court in *Heller* did not purport to find that the Second Amendment right to bear arms was unlimited; rather, it noted that certain longstanding restrictions on the right are "presumptively lawful," and that its list of examples "d[id] not purport to be exhaustive," 554 U.S. at 626-27 & n.26. As the district court noted, because *Heller* also did not attempt to define the standard for assessing challenged restrictions on the right, this Court has adopted a two-step analysis in which we first consider whether the challenged law burdens the right and, if it does, we then determine the appropriate level of scrutiny. *See, e.g., NYSRPA*, 804 F.3d at 254; *Kachalsky*, 701 F.3d at 93; *Decastro*, 682 F.3d at 165-68.

As to the first step of the analysis, we have interpreted the core Second Amendment right identified in *Heller* to be the "'right of *law-abiding, responsible citizens*,'" *United States v. Jimenez*, 895 F.3d 228, 234 (2d Cir. 2018) ("*Jimenez*") (quoting *Heller*, 554 U.S. at 635 (emphasis in *Jimenez*)), to use "'handguns . . . for self-defense in the home,'" *NYSRPA*, 804 F.3d at 254 (quoting *Heller*, 554 U.S. at 628-29). "The Supreme Court . . . identified the core . . . protections by

reference not only to particular uses and particular weapons but also to particular persons, namely, those who are law-abiding and responsible." *Jimenez*, 895 F.3d at 234-35 (internal quotation marks omitted).

New York's at-home license regime, while affecting the core Second Amendment right, imposes nowhere near the burden that was at issue in *Heller*. In contrast to that "total[] ban[]" on "handgun possession in the home," which was held to violate the Second Amendment, *Heller*, 554 U.S. at 628-29, the New York regime allows at-home licenses for applicants who show "good moral character" and show that "good cause" does not exist for denying a license, N.Y. Penal Law §§ 400.00(1)(b) and (n). The New York scheme further specifies that no firearm license is to be allowed for *inter alios*, persons convicted of "serious offense[s]," *id*. § 400.00(c), drug addicts, *see id*. § 400.00(e), and "fugitive[s] from justice," *id*. § 400.00(d). But the statute does not burden the ability of "*law-abiding, responsible* citizens to use arms in defense of hearth and home," *Heller*, 554 U.S. at 635 (emphases added). Thus, the conditions placed on the core Second Amendment right are not onerous, and the Complaint does not allege that any law-abiding,

responsible citizen who applied for a New York firearm license had been denied an at-home permit.

As for the second step of the Second Amendment analysis, we have not interpreted *Heller* as requiring that every

> marginal, incremental or even appreciable restraint on the right to keep and bear arms be subject to heightened scrutiny. Rather, *heightened scrutiny is triggered only by those restrictions that (like the complete prohibition on handguns struck down in Heller)* operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or other lawful purposes).

*Decastro*, 682 F.3d at 166 (emphasis added); *accord New York State Rifle & Pistol Ass'n v. City of New York*, 883 F.3d 45, 56 (2d Cir. 2018). Laws that "place substantial burdens on core rights are examined using strict scrutiny"; but laws that "place either insubstantial burdens on conduct at the core of the Second Amendment or substantial burdens [only] on conduct outside the core . . . can be examined using intermediate scrutiny." *Jimenez*, 895 F.3d at 234. Given that the impact of the New York licensing regime on law-abiding, responsible citizens is modest, we conclude that intermediate scrutiny is the highest level of review potentially appropriate in this case.

In applying intermediate scrutiny, we ask "whether the statutes at issue are substantially related to the achievement of an important governmental interest." *NYSRPA*, 804 F.3d at 261 (internal quotation marks omitted). As it is "beyond cavil that . . . states have substantial, indeed compelling, governmental interests in public safety and crime prevention," we consider only "whether the challenged laws are substantially related to the achievement of that governmental interest." *Id*. (internal quotation marks omitted). "To survive intermediate scrutiny, the fit between the challenged regulation" and the government interest "need only be substantial, not perfect." *Kachalsky*, 701 F.3d at 97 (internal quotation marks omitted).

The Complaint's allegations with regard to Murtari reveal regulation that easily meets--and surpasses--this standard. The Complaint quotes Judge Kehoe's decision denying Murtari a pistol permit and does not dispute the accuracy of any part of it. The decision stated that Murtari was being denied a firearm license as a person who, for more than a decade, had not demonstrated law-abiding temperament, given, *inter alia*, his frequently violating court orders, his being arrested some 50 times, and his being jailed several times. (*See* Comp.

¶ 98.)   Nonetheless, the letter informed Murtari that if he proceeded, "for an extended period of time," to "remain compliant in the future with all lawful court orders, as well as Federal and State statutory law," he could "make a new application" for a license.   (*Id*.)

The Complaint itself thus reveals a close relationship between the licensing regime and the State's interests in public safety and crime prevention--as well as solicitude for the Second Amendment rights of citizens who are responsible and law abiding.   The district court made no error in determining that the New York licensing regime survives intermediate scrutiny and does not unduly burden Murtari's Second Amendment right to bear arms.

CONCLUSION

For the reasons discussed above, we conclude that the appeal is dismissed as to Libertarian Party, which expressly disclaimed any request for appellate relief; is dismissed as moot insofar as it pursues relief on behalf of plaintiff Rober, who is deceased with no successor or representative having been

substituted for her; is dismissed insofar as it pursues relief on behalf of plaintiff Kuzma, whose acquisition of a firearm license has made moot any claim that was pursued for him; and is dismissed insofar as it pursues injunctive relief on behalf of plaintiff Cuthbert, whose relocation to Colorado has made him ineligible to apply for a New York concealed-carry permit. We have considered all of the other arguments that are properly before us and have found them to be without merit.

For the above reasons, the appeal is dismissed in part; the judgment of the district court is otherwise affirmed.